***********
The Full Commission has reviewed the Chief Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Chief Deputy Commissioner. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award with minor modifications.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing or following hearing as:
 STIPULATIONS
1. On December 16, 1999, the parties were bound by and subject to the North Carolina Workers' Compensation Act.
2. On said date, the employer-employee relationship existed between the parties.
3. On said date, Comp Trust AGC of the Carolinas provided the coverage to the employer.
4. On said date, plaintiff was earning an average weekly wage of $420.00.
5. The parties further stipulated into evidence a Pre-Trial Agreement dated January 22, 2001, together with attached medical records and other attached documents.
6. Subsequent to the hearing the parties stipulated into evidence medical records from the VA Hospital in Durham, North Carolina, dated March 12, 2001 and March 26, 2001.
 ***********
The competent evidence of record engenders the following:
 FINDINGS OF FACT
1. Plaintiff was a forty-seven year old high school graduate on the date of the accident, December 16, 1999, and was employed by defendant-employer as a stone monument engraver. As of the date of the accident, defendant-employer had employed plaintiff continuously for approximately one year. Plaintiff had worked "off and on" for defendant-employer since approximately 1972. Plaintiff's employment history encompasses exclusively manual labor, including a tour of duty in the US Army as a helicopter mechanic, work as an engraver at other stone companies, carpentry work and as an asphalt paver.
2. On December 16, 1999, plaintiff sustained an injury when he was moving a piece of stone on a cart, weighing a total of approximately 1,000 pounds, to his work area with a co-employee, Jessie Crotts. Plaintiff attempted to turn the stone when his left hand slipped, and he immediately felt a sharp burning pain, which he described as "fire," in his neck that radiated into his left arm to the fingers. The acute pain subsided but a tingling remained. Plaintiff worked the balance of the day of injury and the next day. Plaintiff hoped to complete the workweek and to recoup over the coming weekend. Plaintiff's symptoms worsened the next day but he completed the workweek.
3. On Sunday, December 19, 1999, plaintiff awoke with acute pain in his neck that radiated through his left arm into the left fingers. Plaintiff sought treatment at the North Hospital of Surry County (hereinafter "Surry County Hospital") emergency room. The attending physician obtained radiographs. Prescription medications were administered and prescribed. Plaintiff was released with a diagnosis of acute left shoulder scapula pain and nerve impingement syndrome.
4. Plaintiff reported the accident to defendant-employer's management staff on December 20, 1999. An accident report was prepared.
5. Defendants initially arranged medical treatment for plaintiff with Dr. William E. Refvem, who saw plaintiff on December 23, 1999. Dr. Refvem ordered an MRI, however, the MRI was not performed because defendants declined to authorize any additional medical treatment after plaintiff's initial evaluation. Dr. Refvem's initial diagnosis was cervical strain, cervical spondylosis, and left radiculopathy. Dr. Refvem authorized plaintiff to return to light duty with restrictions of no lifting over five pounds, no bending, and no stooping.
6. Plaintiff sought treatment from the VA Hospital in Salem, Virginia (hereinafter "VAHS") starting on December 29, 1999. Dr. Gary Joe Harpold, plaintiff's treating physician, ordered appropriate tests and undertook conservative treatment. Dr. Refvem has directed plaintiff to the VA Hospital of Durham, North Carolina, for evaluation for cervical surgery.
7. The undisputed medical evidence is that plaintiff has severe spondylosis involving the mid cervical spine and left foraminal stenosis at C5. Similar changes are present at the C6-C7 and C4-C5 levels, with mild to moderate spinal canal narrowing.
8. It is equally indisputable that plaintiff's cervical pathology is degenerative in etiology, especially as evidenced by the muscular atrophy in his left arm and hand documented by both treating physicians, which would occur only over a substantial period of time before December 16, 1999.
9. Both of plaintiff's treating physicians, however, opined that there is a direct cause and effect relationship between the accident and the onset of plaintiff's symptoms and the resulting evaluation for surgical intervention. Dr. Harpold in particular testified that he was "satisfied" that the December 16, 1999 accident produced plaintiff's osteophyte disk complex abnormality. Both opinions are contingent on plaintiff's credibility in relating the history of injury because both treating physicians concede that the degree of plaintiff's degenerative cervical condition could produce symptoms absent a specific injury.
10. Plaintiff denies that he experienced problems with his neck or shoulder prior to his accident except for a cortisone shot that was administered at the VAHS in his shoulder for "bursitis." He could not remember in what year he received the injection.
11. Defendants attempted to impeach plaintiff's testimony that he was asymptomatic prior to the accident. First, a VAHS report, which appears to document one of Dr. Harpold's examinations of plaintiff as January 19, 2000, records plaintiff as stating that he had been having symptoms "into both of his arms, left greater than right for a number of months." Dr. Harpold testified that the date of the medical note was incorrect as this conversation occurred in July, 2000. Dr. Harpold actually dated the report July 26, 2000, which is entirely consistent with his explanation of the dating error. Second, VAHS records indicate that plaintiff was treated for psoriasis of the left shoulder in 1995 when the possibility of arthritis in the left shoulder was noted. Third, defendant-employer's Vice-President testified that plaintiff told him that he developed a shoulder problem when he quit consuming alcohol prior to the accident. Fourth, Dr. Harpold noted in his July 2000 medical note that the date of plaintiff's accident was last "Fall." As to using the term "Fall" as the date of plaintiff's injury, Dr. Harpold testified that he would not have used that term to describe an injury in December and the term probably was used by plaintiff.
12. The greater weight of the competent evidence supports the finding that plaintiff sustained an injury on December 16, 1999, which at a minimum aggravated or accelerated his degenerative cervical condition. First, the medical notes from Surry County Hospital, where plaintiff was initially treated on December 19, 1999, clearly document plaintiff was reporting the injury as occurring on December 16, 1999. Plaintiff reported to every physician treating him that the injury occurred at work while he was moving a monument stone. Second, the inference from the evidence is that plaintiff's injection for arthritis at the VAHS was in 1995 and there is no convincing evidence that plaintiff experienced any further cervical, arm or hand symptoms that required treatment between 1995 and the date of this work related injury. Third, the undisputed evidence is that plaintiff did not miss any work at defendant-employer prior to the December 16, 1999, accident because of his degenerative cervical condition and consistently labored with monument stones of substantial weight during the period.
13. Defendant-employer admitted that plaintiff was a good worker and had no reason to doubt plaintiff's veracity prior to the accident.
14. Despite some impeachment of plaintiff's testimony, the Commission find plaintiff credible as to the mechanism of injury and establishing the onset of his physical symptoms.
15. Defendants contend that plaintiff did not promptly report his injury. Plaintiff, however, initially believed that his symptoms might be temporary and would subside over the weekend. In plaintiff's Answers to Interrogatories, plaintiff stated that he reported this incident immediately to his foreman and to management personnel. Defendant-employer's foreman was Clifford Johnson. At the hearing, plaintiff testified that he reported the injury to Jesse Crotts, who plaintiff considered his immediate supervisor, but did not report the incident to Clifford Johnson, the foreman. Plaintiff did report the accident on December 20, 1999, to a member of defendant-employer's management staff who subsequently arranged for plaintiff's treatment with Dr. Refvem.
16. Plaintiff has not worked at any employment since December 17, 1999. Plaintiff has continuing pain, sometimes acute, and weakness in his neck, left arm and hand. At an undocumented date subsequent to plaintiff's accident, plaintiff offered to return to defendant-employer in a light duty capacity. Defendant-carrier advised defendant-employer to secure a release from plaintiff's VAHS physician. Defendant-employer contacted VAHS, but a release was not forthcoming. Dr. Harpold testified that he would have released plaintiff only for sedentary work. Defendant-employer's Vice-President admitted that plaintiff was not able to perform his regular work.
17. Plaintiff's attorney referred plaintiff to Dr. Andrew P. Bush for evaluation, but not for treatment. Dr. Bush, following one examination of plaintiff and review of pertinent medical records introduced into evidence, confirmed plaintiff's diagnosis. Dr. Bush opined that it would be difficult if not impossible for plaintiff to return to his work that required physical labor, but sedentary work would have been possible.
18. Plaintiff has proven by the greater weight of the evidence that he sustained an injury by accident on December 19, 1999, that substantially aggravated or accelerated his preexisting degenerative cervical disease and more likely than not caused plaintiff's osteophyte disk complex abnormality.
19. Plaintiff's report of the injury three days after the accident was reasonable. First, plaintiff believed that his symptoms would resolve without medical intervention. Second, when plaintiff's symptoms became acute, he reported the injury on the first work day thereafter. Even if plaintiff failed to immediately report his injury, there is no evidence that defendants were prejudiced. Defendants do not contend that plaintiff was impaired on the date of the accident. Except for plaintiff's treatment over the intervening weekend, defendants arranged plaintiff's medical treatment with Dr. Refvem, but subsequently refused to authorize further treatment.
20. Plaintiff has proven by the greater weight of the evidence that the symptoms he is experiencing are a proximate result of the work related accident on December 16, 1999.
21. Plaintiff has proven by the preponderance of the evidence that he has been disabled from gainful employment after December 17, 1999, as the result of this incident. Defendant-employer did not, after consultation with plaintiff's treating physician, return plaintiff to active work in any capacity. Given plaintiff's career history as a laborer and the sedentary work restrictions imposed by his treating physicians, plaintiff has been and remains totally disabled since December 17, 1999.
22. Plaintiff testified that he received approximately three weeks of unemployment compensation benefits. The amount of the benefits was not introduced into evidence.
23. Despite Dr. Bush's attempt to assign a permanent partial disability rating, such a rating would be speculative because plaintiff has not reached maximum medical improvement and will, in all probability, undergo cervical surgery.
24. Plaintiff's stipulated average weekly wage results in a weekly compensation rate of $280.00.
 ***********
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. Plaintiff has proven by the greater weight of the evidence that he sustained an injury by accident on December 16, 1999, which injury arose out of and during the course of plaintiff's employment with defendant-employer and materially accelerated or aggravated plaintiff's preexisting cervical degenerative disease. N.C. Gen. Stat. § 97-2;Anderson v. Northwestern Motor Co., 233 N.C. 372, 64 S.E.2d 265 (1951).
2. Plaintiff's symptoms, including neck, left arm and left hand radiculopathy, are the proximate result of plaintiff's work-related accident on December 16, 1999, and defendants are liable to compensate plaintiff for the resulting disability. Wilder v. Barbour Boat Works,84 N.C. App. 188, 352 S.E.2d 690 (1987).
3. Plaintiff's report of his accident on December 16, 1999, was timely given under the facts and circumstances of this case. Defendants have not been prejudiced by any delay in notice. N.C. Gen. Stat. § 97-22.
4. Plaintiff has been temporarily totally disabled since his last day of work on December 17, 1999, and remains disabled. N.C. Gen. Stat. § 97-29; Kennedy v. Duke Univ. Medical Center, 101 N.C. app. 24,398 S.E.2d 677 (1990). Defendants shall receive a credit for all sums which plaintiff received in unemployment compensation benefits subsequent to his injury. N.C. Gen. Stat. § 97-42.1.
5. Plaintiff is entitled to payment for medical treatments required to effect or cure or give relief to his condition. N.C. Gen. Stat. §97-25.
 ***********
The foregoing Findings of Fact and Conclusions of Law engender the following:
 AWARD
1. Defendants shall pay to plaintiff past due temporary total disability compensation benefits beginning on December 18, 1999, at the rate of $ 280.00 per week and continuing thereafter, less the unemployment insurance benefits received by plaintiff post-injury, until further order of the Commission. All accrued sums shall be paid in a lump sum; further benefits shall be paid weekly. These benefits are awarded to plaintiff subject to the attorney fee awarded below.
2. Defendants shall pay all medical expenses resulting from plaintiff's injury up to the date of this Opinion and Award, and defendants shall hereafter pay reasonable and necessary future medical expenses as may effect or cure or provide relief for the injuries sustained by plaintiff as a consequence of his December 16, 1999, accident.
3. A reasonable attorney fee of twenty-five percent (25%) of the temporary total disability compensation herein awarded plaintiff is approved for plaintiff's counsel for services rendered to plaintiff. Defendants shall deduct the approved attorney fee from the accrued sum owed plaintiff and pay the attorney fee directly to plaintiff's attorney in a lump sum. Of the continuing payments ordered, defendants shall pay every fourth check directly to plaintiff's attorney.
4. Defendants shall pay all costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER